Docket Nos. 17, 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

AMBER COULTER,

      Plaintiff,

    v.

NATIONAL TENANT NETWORK,

      Defendant.

Civil Action No. 24-6798-RMB-EAP

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

    **THIS MATTER** comes before the Court upon Plaintiff Amber Coulter's ("Coulter's") two Motions for Default Judgment against Defendant National Tenant Network ("NTN") pursuant to Federal Rule of Civil Procedure 55.  [Docket Nos. 17, 20.]  Having considered Coulter's submissions, the Court resolves the Motions without oral argument.  FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b).  For the reasons that follow, the Court **DENIES WITHOUT PREJUDICE** Coulter's Motions for Default Judgment for lack of personal jurisdiction over NTN.  The Court will **ORDER** Coulter to **SHOW CAUSE** explaining why this Court should not dismiss the Complaint.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    Coulter alleges violations of the Fair Credit Reporting Act ("FCRA'"), 15 U.S.C. § 1681, *et seq*.  On February 14, 2024, NTN allegedly received a "dispute" from Coulter "identif[ying] inaccurate and incomplete addresses and case filings and information reported by" NTN on Coulter's consumer credit report.  [Docket No. 1-4, at 2 ("Compl.").]  The addresses appear to be purportedly inaccurate former tenancies of Coulter's.  *See* [*id.* at 6.]

"Specifically," Coulter alleges that she "never lived at these addresses on file and the account/case was falsely verified as belonging to [her] without any supporting contract or agreement." [*Id.* at 2.] NTN putatively failed "to conduct a reinvestigation," "correct or delete [the] inaccurate information," and "provide [Coulter] with the description of the reinvestigation procedure." [*Id.*] NTN further violated the FRCA "for failing to block information resulting from identity theft within four business days of receiving appropriate proof," "furnish[ing] a copy of [Coulter's] consumer report to several companies without permissible purpose and without [her] written consent," and "not implement[ing] an automated system that finds incomplete or inaccurate information in a customer's file." [*Id.*] Due to NTN's alleged lapses and shortcomings, Coulter has "faced severe consequences, including denial of credit, eviction from [her] home, and loss of [her] job and vehicle," which have inflicted "significant emotional distress, financial loss, and disruption to [her] family's life." [*Id.* at 3.] Coulter is seeking actual and punitive damages. [*Id.*]

On June 5, 2024, Coulter submitted a Complaint setting forth the above and an application to proceed *in forma pauperis* ("IFP"). The Court subsequently granted Coulter IFP status, docketed the Complaint, and directed the Clerk of Court to issue summons for a United States Marshal to serve upon NTN at the address provided by Coulter. [Docket No. 3.] On March 19, 2025, after two unsuccessful attempts to serve NTN,[1] the Court dismissed this case without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for failure to

---

[1] The first address provided by Coulter was an unacceptable post office box and the second a vacancy. [Docket Nos. 6, 8.]

timely effectuate service and good cause not having been otherwise shown.[2]  [Docket Nos. 6, 8, 10.]

The following month Coulter filed a Motion to Reopen Case, providing NTN's principal place of business in Oregon as well as the Oregon address of its registered agent, CT Corporation System; attached also were an affidavit of good faith outlining Coulter's diligent efforts to discover this information and a completed USM-285 form for the United States Marshal Service.  [Docket Nos. 11, 11-1.]  After balancing the factors adumbrated in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), the Court granted the motion and reopened the case.  [Docket No. 12.]  A United States Marshal then timely served NTN's registered agent at 780 Commercial Street, Southeast, Suite 100, Salem, Oregon 97301, on July 22, 2025.  [Docket No. 15.]  NTN had until August 12, 2025, to file an answer, responsive motion, or otherwise defend against the Complaint.  *See* FED. R. CIV. P. 12.  To date, NTN has not done so.  After receiving Coulter's request, the Clerk of Court entered an Entry of Default against NTN on August 15, 2025.  [Docket No. 16.]  That same day, Coulter filed her first Motion for Default Judgment, followed by a second Motion for Default Judgment on October 6, 2025.[3]  [Docket Nos. 17, 20.]

---

[2] The Court had previously issued a Notice of Call for Dismissal on February 28, 2025, to which Coulter did not respond.  [Docket No. 9.]

[3] In the meanwhile, Coulter filed a series of supplements, status requests, and letters.  [Docket Nos. 18–19, 21–23.]  To the extent that any one of these amends the Complaint with new allegations, claims, or requests for relief, there is no evidence before the Court that these filings were properly served upon NTN and cannot form the basis of a default judgment.  *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).  In any event, the Court lacks personal jurisdiction over NTN as explained below, even were these novelties to be considered.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a party to apply for and the court to enter default judgment against a party that fails to plead or otherwise defend claims asserted against it.  FED. R. CIV. P. 55(b)(2).  Once the Clerk of Court completes the ministerial task of entering a party's default,  a court may consider a motion for default judgment in the following manner.  First, the defendant must have been properly served.  *Gold Kist*, 756 F.2d at 19. Second, the court must have subject matter jurisdiction over the dispute and personal jurisdiction over the parties.  *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017).  Third, the complaint must sufficiently state a cause of action.  *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *Directv, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).  Fourth, the court must weigh the three default judgment factors: (1) whether the party subject to the default has a meritorious defense, (2) whether the party seeking default would be prejudiced without it, and (3) whether the default resulted from the defendant's culpable conduct.  *Tri-Union Seafoods, LLC v. Ecuatorianita Imp. & Exp. Corp.*, No. 20-9537, 2021 WL 1541054, at *7 (D.N.J. Apr. 20, 2021) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *2 (D.N.J. July 24, 2015)).  Finally, the plaintiff must have proven damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

"The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits ....'"  *Chanel*, 558 F. Supp. 2d at 535 (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).  "Because the entry of a default judgment prevents the resolution of claims on the merits, '[the Third Circuit] does not favor entry of defaults and default judgments.'"  *Loc. 365 Pension Fund v.*

4

*Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). "'[D]oubtful cases' should be resolved in favor of the party against whom one is sought." *Gera v. Borough of Frackville*, No. 25-1722, 2025 WL 3158699, at *2 (3d Cir. Nov. 12, 2025) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 194–95).

## III.   DISCUSSION

"First, the Court must determine whether" Coulter properly served NTN. *Pension Benefit Guar. Corp. v. Com. Investigation & Adjustment Co., Inc.*, No. 25-5677 (MAS) (TJB), 2026 WL 446421, at *3 (D.N.J. Feb. 17, 2026) (citations omitted); *see also Ramada Worldwide Inc. v. Kim,* No. 09-4354 (WHW), 2010 WL 11483205, at *2 (D.N.J. July 15, 2010) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991)) ("The court must first assess the adequacy of service of process in order to determine whether default judgment should be entered."). If properly effectuated, the Court will determine next whether subject matter and personal jurisdiction exist.

### A. Proper Service

A court may only enter default judgment against defendants who were properly served. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist*, 756 F.2d at 19). Coulter "bears the burden of proof on that issue." *Grand Entm't Grp. v. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). This burden is satisfied "by a preponderance of the evidence using affidavits, depositions, and oral testimony." *Mills v. Ethicon*, 406 F. Supp. 3d 363, 392 (D.N.J. 2019) (citation omitted).

5

Federal Rule of Civil Procedure 4(h)(1) provides two acceptable methods for serving a "domestic or foreign corporation ... in a judicial district of the United States." FED. R. CIV. P. 4(h)(1). "Those methods are 'in the manner prescribed by Rule 4(e)(1) for serving an individual' or 'by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.'" *Mills*, 406 F. Supp. 3d at 392 (citations omitted).

Rule 4(e)(1) provides that service may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). New Jersey Court Rule 4:4–4(a)(6) states that personal jurisdiction can be obtained over a foreign corporation by "serving a copy of the summons and Complaint on any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process on behalf of the corporation." N.J. CT. R. 4:4-4(a)(6); *see Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 512 (D.N.J. 2008). "Thus, both Rule 4(h) and New Jersey law permit service of process upon a foreign corporation by serving an agent of the foreign corporation who is authorized by appointment or by law to receive it." *Dewey*, 558 F. Supp. 2d at 512.

According to the Oregon Secretary of State's Business Registry, CT Corporation System is NTN's registered agent, upon whom a United States Marshal served copies of the Complaint and summons, as attested to by the United States Marshal and Coulter. *See* [Docket Nos. 11, 11-1.] The Court is satisfied that Coulter properly served NTN. The Court will address next the jurisdictional prerequisites.

## B. Personal Jurisdiction

Before entering default judgment, the Court must make a "threshold determination" of whether it has subject matter jurisdiction over the claims asserted and personal jurisdiction over NTN. *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). Subject matter jurisdiction is assured as Coulter alleges violations of federal law. *See* 28 U.S.C. § 1331.

"Turning to the issue of personal jurisdiction, if the court lacks personal jurisdiction over a defendant, the court does not have authority to render a default judgment, and any such judgment will be deemed void." *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 820–21 (D.N.J. 2021) (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008)). "While unlike subject matter jurisdiction, a court generally may not raise personal jurisdiction *sua sponte*, [but] when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects." *Allaham*, 635 F. App'x at 36; *see also Lu v. Young*, No. 23-2496, 2024 WL 3160363, at *3 n.7 (3d Cir. June 25, 2024) ("And, to the extent that he contends that the District Court should have entered default judgment against these defendants, we conclude that the District Court did not err in declining to do so where it concluded that it lacked personal jurisdiction over them."); *Mark IV Transp.*, 705 F. App'x at 108 ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction.") (collecting cases).

"In the absence of an evidentiary hearing," as is the case here, "a plaintiff's complaint need only establish a prima facie case of personal jurisdiction." *Barrett*, 518 F. Supp. 3d at 821 (citing *Allaham*, 635 F. App'x at 36); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). As such, Coulter is entitled "to have [her] allegations taken as true and all factual disputes drawn in

7

[her] favor." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). The Court shall do so liberally, in accordance with Coulter's *pro se* status. *See Beasley v. Howard*, 623 F. Supp. 3d 434, 439 (D.N.J. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Personal jurisdiction obtains by the law of the state in which it sits; here, New Jersey. *Weinstein v. Pullar*, No. 13-4502 AMD, 2013 WL 6734317, at \*3 (D.N.J. Dec. 19, 2013); *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). New Jersey's long–arm statute authorizes the exercise of jurisdiction "coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (quoting N.J. Ct. R. 4:4–4(c)). The Supreme Court's "canonical decision in this area remains" *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "There, the Court held that a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316–17). "Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn.8–9 (1984)).

### 1. General Jurisdiction

A court "has general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919).  This "breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford Motor*, 592 U.S. at 359 (quoting *id.* at 137).  For corporations, this is typically their "place of incorporation and principal place of business." *Id.* (quoting *Daimler*, 571 U.S. at 137).

Coulter has not made a *prima facia* showing that NTN is "at home" in New Jersey.  NTN's place of incorporation is not alleged and Oregon is its claimed principal place of business.  *See* [Docket No. 11-1, ¶ 5.]  And while general jurisdiction may also arise "in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State,'" Coulter alleges nothing of the kind here.[4] *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173 (D.N.J. 2016) (quoting *Daimler*, 571 U.S. at 139 n.19); *see Abira Med. Lab'ys, LLC v. IntegraNet Physician Res., Inc.*, No. 23-03849 (GC) (TJB), 2024 WL 1905754, at *3 (D.N.J. Apr. 30, 2024) (citation omitted) ("Such an exceptional case requires a plaintiff to furnish at least some evidence that reasonably suggests that a corporate entity's contacts with the forum state are so substantial that they surpass the entity's contacts with other states.").  Finding no *prima facia* showing of general jurisdiction, Coulter must demonstrate that this Court has specific jurisdiction over NTN to continue along the default judgment pathway.

---

[4] Although a party can consent to general jurisdiction by way of registration statutes, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985), New Jersey's business registration statutes "do not explicitly provide that registration constitutes consent to general personal jurisdiction" for the reasons cogently marshalled by the Honorable Robert Kirsch in *Simplot India LLC v. Himalaya Food Int'l Ltd.*, No. 23-1612 (RK) (TJB), 2024 WL 1136791, at *9–*10 (D.N.J. Mar. 15, 2024), even had Coulter advocated this position or evinced it in some way.

### 2. Specific Jurisdiction

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor*, 592 U.S. at 359. There are three prongs to the specific jurisdiction analysis. "First, there must be purposeful availment: minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (citing *id.*). "Second, the contacts must give rise to—or relate to—plaintiff's claims." *Id.* (citing *Ford Motor*, 592 U.S. at 359). "And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 476). A proper exercise of specific jurisdiction thus occurs "when the cause of action arises from the defendant's forum related activities," *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (citation omitted), such that the defendant "should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

This review ensures that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Croat v. Mission Fine Wines, Inc.*, No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (quoting *Stevens v. Welch*, No. 10-03928, 2011 WL 541808, at *3 (D.N.J. Feb. 7, 2011)). "These rules derive from and reflect two sets of values—treating defendants fairly and protecting 'interstate federalism.'" *Ford Motor*, 592 U.S. at 360 (quoting *World-Wide Volkswagen*, 444 U.S. at 293).

10

At step one, there is nothing in the Complaint nor Coulter's assorted filings to indicate that NTN "purposefully avail[ed] itself of the privilege of conducting activities within" New Jersey and "invoke[ed] the benefits and protections of [its] laws." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)). There are no allegations from which the Court could liberally and reasonably infer, for example, that NTN "regularly markets and advertises its goods and services within" New Jersey, or "regularly conducts business with [New Jersey] residents." *Id.* (citation omitted); *see, e.g.*, *Brainbuilders LLC v. EmblemHealth, Inc.*, No. 20-12703 (FLW) (TJB), 2021 WL 2025004, at *6 (D.N.J. May 21, 2021) ("None of the New York Defendants have offices or facilities in New Jersey."). Nor are there allegations that NTN "mailed" materials or "traded phone calls with" Coulter, or otherwise carried on a correspondence of some kind with her in New Jersey. *See O'Connor*, 496 F.3d at 31 (finding specific jurisdiction where defendant mailed brochures and exchanged phone calls with plaintiffs); *cf. also Brahney v. Pinnacle Credit Servs.*, No. 14-1422 RBK/AMD, 2014 WL 4269127, at *4 (D.N.J. Aug. 29, 2014) (dismissing FCRA claims for want of personal jurisdiction because "the Complaint does not allege that Vincelli sent any letters to Plaintiff, or made any affirmative attempt to collect a debt from him.").

True, Coulter has attached to the Complaint copies of letters *she* mailed to NTN, but "the unilateral activity of another party" is insufficient to exercise specific jurisdiction. *Croat*, 2020 WL 1921955, at *4; *see Helicopteros*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). The *Burger King* court explicated well this central tenet of the doctrine:

> Applying this principle, the Court has held that the Due Process Clause forbids the exercise of personal jurisdiction over an out-of-state automobile distributor whose only tie to the forum resulted from a customer's decision to drive there, *World-Wide Volkswagen*, 444 U.S. 286; over a divorced husband sued for child-support payments whose only affiliation with the forum was created by his former spouse's decision to settle there, *Kulko v. Cal. Sup. Ct.*, 436 U.S. 84 (1978); and over a trustee whose only connection with the forum resulted from the settlor's decision to exercise her power of appointment there, *Hanson v. Denckla*, 357 U.S. 235 (1958).  In such instances, the defendant has had no "clear notice that it is subject to suit" in the forum and thus no opportunity to "alleviate the risk of burdensome litigation" there.  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

*Burger King*, 471 U.S. at 475 n.17 (alterations in original).  It is "essential" that NTN itself has targeted the state of New Jersey "by some act."  *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984) (quoting *Hanson*, 357 U.S. at 253).

Take one possibility: specific jurisdiction may lie over an entity that "reache[s] into" the forum state by electronically accessing or directing financial institutions to electronically access credit reports located in the forum.  *See, e.g.*, *Rogers v. Smith Volkswagen, LTD*, No. 19-2567, 2020 WL 1676400, at \*1, \*4–\*5 (E.D. Pa. Apr. 6, 2020) (exercising specific jurisdiction over foreign corporation's alleged FCRA violations because it directly accessed and directed other institutions to access plaintiff's credit report from a TransUnion located in Chester, Pennsylvania).  Contrastingly, Coulter does not allege that NTN furnished copies of her disputed credit report to entities or individuals located in New Jersey, or that its other alleged lapses and failings penetrated New Jersey in some way.  *See* [Compl., at 2–10; Docket Nos. 18–19, 21–23.]

The Court is left with Coulter's residency in the state, but, absent any identifiable contacts by NTN, her New Jersey residency, even if known to NTN, "alone does not give rise to specific personal jurisdiction."  *Smith-Bishop v. Experian Info. Sols., Inc.*, No. 2:24-CV-00408 (BRM) (AME), 2025 WL 635329, at \*5 (D.N.J. Feb. 27, 2025); *see also Marten v.*

*Godwin*, 499 F.3d 290, 298 (3d Cir. 2007) (citations omitted) (explaining "simple point" that "plaintiff's residence is relevant to the 'jurisdictional inquiry' insofar as residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum. However, the state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants.").

This, in other words, is another example of fortuity or unilateral decision. *Cf., e.g.*, *Croat*, 2020 WL 1921955, at \*4 (finding plaintiff's decision to live in forum state a unilateral activity not conferring specific jurisdiction over foreign corporation in employment context); *Stevens*, 2011 WL 541808, at \*5 ("Plaintiff chose to live in New Jersey and decided to use his home as a base of operations is a mere fortuity… and such fortuitousness cannot be the basis of personal jurisdiction without raising concerns of due process."). The Court cannot liberally and plausibly find that NTN's contacts, if any, with New Jersey are its "own choice and not 'random, isolated, or fortuitous,'" such that it "deliberately 'reached out beyond' its home."[5] *City of Trenton Bd. of Educ. v. Bank of Am., N.A.*, No. 24-5647 (ZNQ) (JTQ), 2024 WL 5087804, at \*3 (D.N.J. Dec. 12, 2024) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

What the Court surmises from the allegations is that Coulter felt the *effects* of NTN's purported conduct in New Jersey.[6] For instance, Coulter alleges the credit report inaccuracies resulted in "denial of credit, eviction from [her] home, and loss of [her] job and vehicle,"

---

[5] Even if Coulter had alleged contacts between herself and NTN that took place outside of New Jersey, those contacts "are not purposeful contacts with the state itself." *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 529 (D.N.J. 2013) (quoting *O'Connor*, 496 F.3d at 317); *see also Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542–43 (3d Cir. 1985).

[6] This being so because Coulter's two Motions for Default Judgment are not helpful to the Court's review. *See* [Docket Nos. 17, 20.]

13

ostensibly in New Jersey.  [Compl., at 3.]  She and her children have "been forced to relocate and adjust to new living conditions and school districts" too.  [*Id.*]  These allegations summon forth the "effects" test for specific jurisdiction set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).[7]

While the "effects" test and the traditional test, applied above, "are cut from the same cloth," they have distinct requirements.  *Marten*, 499 F.3d at 297.  "The *Calder* test has three primary elements: 'First, the defendant committed an intentional tort.  Second, the forum was the focal point of the harm suffered by the plaintiff as a result of that tort.  Third, the forum was the focal point of the tortious activity in the sense that the tort was "expressly aimed" at the forum.'"  *Agbottah v. Orange Lake Country Club*, No. 12-1019, 2012 WL 2679440, at *5 (D.N.J. July 6, 2012) (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 261 (3d Cir. 1998)).  Under *Calder*, Coulter must show that NTN "'knew that [she] would suffer the brunt of the harm caused by the tortious conduct in the forum, and [must] point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'"  *Marten*, 499 F.3d at 297 (quoting *IMO Indus.*, 155 F.3d at 266).

In the context of FRCA claims, assuming violations of the statute are properly construed and alleged as intentional torts,[8] the Honorable Ann Marie Donio's application of

---

[7] There is no apparent application of the stream-of-commerce analysis based on the allegations before the Court.  "The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant has injected its goods into the forum state indirectly via the so-called stream of commerce, rendering it foreseeable that one of the defendant's goods could cause injury in the forum state."  *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citation and quotation marks omitted).

[8] "Several courts have analogized that a violation of the FCRA is akin to an intentional tort and applied the effects test."  *Rogers*, 2020 WL 1676400, at *5 n.3 (collecting cases); *see also Smith-Bishop*, 2025 WL 635329, at *6–*7.

the "effects" test in *Weinstein*, 2013 WL 6734317, is instructive.   There, Judge Donio explained that "the Third Circuit's interpretation of the *Calder* 'effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that [the plaintiff] felt in the forum state[.]" *Id.* at *5 (quoting *Marten*, 499 F.3d at 297).   Extrapolating, "[t]he mere allegation that the plaintiff 'experience[s] the injury' caused by defendant's allegedly tortious conduct does not, without more, show that defendant "'expressly aimed' its conduct at New Jersey." *Id.* (quoting *IMO Indus.*, 155 F.3d at 265 n.8). As Judge Donio further explained:

> [I]n *Agbottah*, 2012 WL 2679440, the court considered whether there was personal jurisdiction over a nonresident defendant that purportedly filed a false credit report about the New Jersey plaintiff with Experian, a nationwide credit reporting agency.  *Id.* at *4.  In *Agbottah*, plaintiffs asserted that New Jersey constituted the focal point of the harm because defendant's filing of the false credit report allegedly caused "severe financial harm" to plaintiffs in New Jersey.  *Id.* at *5.  The *Agbottah* court found plaintiffs' allegations "patently insufficient to invoke the [*Calder*] 'effects test'" because plaintiffs failed to establish any "direct targeting towards New Jersey."  *Id.* (quoting *IMO Indus.*, 155 F.3d at 261).

*Id.* (alterations in original).

Here, as there, Coulter has not alleged "specific facts showing a deliberate targeting of" New Jersey.  *LaSala v. Marfin Popular Bank Public Co., Ltd.*, 410 F. App'x 474, 477 (3d Cir. 2011) (quoting *Marten*, 499 F.3d at 298).   There are no allegations that NTN "'knew that [Coulter] would suffer the brunt of the harm caused by the tortious conduct in the forum" nor any "point[ing] to specific activity indicating that [NTN] expressly aimed its tortious conduct at the forum.'"  *Weinstein*, 2013 WL 6734317, at *4 (quoting *Marten*, 499 F.3d at 297).  "For example, the *Calder* defendants wrote and edited a defamatory article about a California resident, using California sources, *while knowing that their employer would circulate the article in California*."  *Boyd v. Cleara, L.L.C.*, No. 24-10609, 2025 WL 2082675, at *3 (5th Cir. July 24,

15

2025) (emphasis added) (citation omitted).  Coulter is "assert[ing] that [she] suffered the effects of [NTN's] tortious conduct in New Jersey, where [she] reside[s,] … [but] …. merely 'experienc[ing] the injury' in the state of [her] residence, without more, fails to demonstrate that [NTN] 'expressly aimed' [its] conduct at New Jersey." *Weinstein*, 2013 WL 6734317, at *5 (quoting *IMO Indus.*, 155 F.3d at 265 n.8).  Said differently, "[t]here [are] no allegation[s] that [NTN's allegedly] tortious conduct was aimed at [New Jersey] any more than it was aimed at any other state." *Boyd*, 2025 WL 2082675, at *3.

And *Weinstein* emulates well *Int'l Shoe* and its progeny, for without the deliberate targeting of or express aiming at the forum, it is instantly imaginable how an "injury forum," so to speak, would, in most cases, simply collapse into a plaintiff's residency; itself independently insufficient to confer specific jurisdiction.  There would be a very real concern that a test "cut from the same cloth" as the traditional approach would swaddle and stifle its progenitor; as the *Hassan* court made clear:  The "effects" test does not "impose[ ] a universally *lower* jurisdictional hurdle."[9]  *See* 114 F.4th at 189 (citation omitted) (emphasis in original) ("[I]t is not uncommon for a court to dismiss intentional tort claims for want of jurisdiction under the 'effects' test while finding jurisdiction proper as to other claims under the traditional test.").  The case at bar exemplifies this potentiality were the Court to exert specific jurisdiction over NTN.  What is alleged here is harm and harm alone, which does not pass timeworn constitutional muster.  *Cf. IMO Indus.*, 155 F.3d at 265 n.8 ("[T]hat X would experience the injury caused by the drop in W's value at its headquarters in New Jersey would

---

[9] The Court need not elaborate on the infinitesimal distinctions between the two tests and their application here.  While "key" differences do exist, the Court's task here is applying them to "the facts and claims at issue" as alleged by Coulter. *Hassan*, 114 F.4th at 189.  "We do not speculate on hypothetical cases not before us." *Learning Res., Inc. v. Trump*, 607 U.S.----, 146 S. Ct. 628, 644 n.4 (2026).

16

not by itself be enough to meet X's burden to show that Y "expressly aimed" its conduct at New Jersey.").

For these reasons, Coulter has "not alleged specific facts to show a deliberate or express targeting of New Jersey." *Weinstein*, 2013 WL 6734317, at *5. The Court therefore also concludes that Coulter's allegations concerning the effects of the allegedly tortious conduct are insufficient to establish express targeting of harm at New Jersey and to subject nonresident NTN to this Court's jurisdiction. Seeing that Coulter has not made a *prima facie* showing of purposeful availment required firstly for specific jurisdiction, this Court proceeding onward to steps two and three is impracticable, and therefore unnecessary. Consequently, Coulter has not made a *prima facie* showing that this Court has personal jurisdiction over NTN. "As a result, the Court lacks personal jurisdiction over [NTN] and cannot issue a default judgment against it." *Obembe v. Tata Consultancy Servs., Ltd.*, No. 2:25-CV-01027 (BRM) (JRA), 2025 WL 2408714, at *5 (D.N.J. Aug. 20, 2025) (citation omitted).

### C. Transfer

Having concluded that personal jurisdiction is lacking, the Court "must at least consider a transfer." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020); *see Abira Med. Lab'ys, LLC v. Blue Cross & Blue Shield of Ill.*, No. CV 24-00955 (GC) (RLS), 2024 WL 4345411, at *5 (D.N.J. Sept. 30, 2024) (citation omitted) ("The Third Circuit Court of Appeals has explained that "a district court that lacks personal jurisdiction must at least consider a transfer."). 28 U.S.C. § 1631, "the relevant statute," *Danziger & De Llano*, 948 F.3d at 132, provides that "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court … in which the action or appeal could have been brought at the time filed," 28 U.S.C. § 1631. "The district court does, however, have 'broad discretion'

not to transfer." *Danziger & De Llano*, 948 F.3d at 132 (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995)). "And though [the district court] may transfer a case at the parties' request or sua sponte, it need not investigate on its own all other courts that might or could have heard the case." *Id.* (citations and internal quotation marks omitted).

At this time, the Court cannot make an informed decision on whether transfer to the District of Oregon—the presumed transferee forum because NTN's principal place of business is located in the state of Oregon—would serve the "interest of justice." The paramount concern here is the statute of limitations. "The 'interest of justice' requirement ordinarily will be satisfied if the statute of limitations has expired subsequent to the time of the original filing, so that transfer, rather than dismissal, will preserve the plaintiff's cause of action." *Rinaldi v. FCA US LLC*, No. 1:22-CV-00886-NLH-MJS, 2022 WL 17340667, at *7 (D.N.J. Nov. 30, 2022) (citation omitted). Because Coulter's claims allegedly center on events on or around February 2024, the FCRA's two-year statute of limitations is a realizable bar to judicial review were the Court to dismiss her claims rather than transfer them. *See Oyedeji v. Checkr, Inc.*, No. 23-04096, 2024 WL 1598697, at *3 (D.N.J. Apr. 12, 2024).

And yet, the Court does not wish to transfer this case at this time without providing Coulter an opportunity to address the issue, given the time and expense that may accrue to her, as a New Jersey resident, if she has to litigate in Oregon. Moreover, the Court wants to afford Coulter an opportunity to show cause explaining how personal jurisdiction exists over NTN, given that the Court raised the issue *sua sponte*, thus possibly mooting the issue entirely. Exercising its "broad discretion," the Court declines to transfer the case at this time. *Danziger & De Llano*, 948 F.3d at 132.

18

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Amber Coulter's Motions for Default Judgment filed pursuant to Federal Rule of Civil Procedure 55 [Docket Nos. 17, 20] are **DENIED WITHOUT PREJUDICE**. Because this Court finds that it presently has no personal jurisdiction over Defendant National Tenant Network, Plaintiff is **ORDERED** to **SHOW CAUSE**, within 30 days of the entry of this Order, explaining why the Court should not transfer this case to the District of Oregon or, alternatively, dismiss the Complaint without prejudice. If a response is not filed, the Court will likely transfer this case to the District of Oregon.

Plaintiff should be mindful that it would be inappropriate to assert personal jurisdiction based on new allegations which are not contained in the Complaint served upon Defendant. That would amount to a *de facto* amended complaint which cannot properly anchor a motion for default judgment for lack of proper service. Should she file a response to the Court's show cause order, Plaintiff will be permitted to file an accompanying renewed motion for default judgment.

<u>March 25, 2026</u>                                    **/s/ Renée Marie Bumb**
Date                                                              Renée Marie Bumb
                                                                     Chief United States District Judge

19